**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DJENNIFER BENVINDA SEMEDO | ) | |
| | ) | Case No. 26-10873 |
| Petitioner, | ) | |
| | ) | **PETITION FOR WRIT OF** |
| v. | ) | **HABEAS CORPUS** |
| | ) | |
| TODD M. LYONS, Acting Director Immigration and | ) | |
| Customs Enforcement, Boston Field Office | ) | |
| DAVID WESLING,  Acting Field Office Director, | ) | |
| MICHAEL KROL, HSI New England Special | ) | |
| Agent in Charge | ) | |
| KRISTI NOEM, U.S. Secretary | ) | |
| of Homeland Security, PAMELA BONDI, | ) | |
| U.S. Attorney General, DONALD TRUMP, President | ) | |
| of the US | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

## INTRODUCTION

1.      Petitioner Djennifer Benvinda Semedo ("Petitioner") is a Cape Verde national. On information and belief, she was unlawfully detained by federal immigration agents on February 11, 2026.

2.      Accordingly, to vindicate Petitioner's statutory, constitutional, and regulatory rights, this Court should grant the instant petition for a writ of habeas corpus.

3.      Petitioner alleges violations of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.

4.      Petitioner asks this Court to find that her arrest and detention are illegal and order her immediate release, a stay of removal from jurisdiction of the United States or transfer outside of the District of Massachusetts, and a reasonable award of attorney's fees.

## JURISDICTION

5.      This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). Under 8 U.S.C. § 1252(e)(2), this Court has habeas authority to determine whether Petitioner is a noncitizen and whether Petitioner was ordered removed under 8 U.S.C. § 1225(b)(1).

7.      This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

2

8.      Venue is proper because Petitioner is detained at Burlington ICE Field Office in Burington, Massachusetts, which is within the jurisdiction of this District. After her detention at Burlington, ICE transferred the Petitioner to Beth Israel Hospital due to a medical emergency.

9.      Venue is proper in this District because Respondents are officers, employees, or agencies of the United States, a substantial part of the events or omissions giving rise to her claims occurred in this District, and Petitioner resides in this District. There is no real property involved in this action.  28 U.S.C. § 1391(e).

**REQUIREMENTS OF 28 U.S.C. § 2243**

10.      The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

11.      Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

**PARTIES**

12.      Petitioner Djennifer Benvinda Semedo entered the United States as a child beneficiary of her mother's lawful permanent resident status. She has been living in the United States for about 11 years. Petitioner is a resident of Massachusetts. She is in the custody, and under the direct control, of Respondents and their agents.

3

13.     Respondent Todd Lyons is named in his official capacity as the Acting Director for U.S. Immigration and Customs Enforcement. As the Senior Official Performing the Duties of the Director of ICE, he is responsible for the administration and enforcement of the immigration laws of the United States and is legally responsible for pursuing any effort to remove the Petitioner; and therefore, is a custodian of the Petitioner.

14.     Respondent David Wesling is sued in his official capacity as the Director of the Boston Field Office of U.S. Immigration and Customs Enforcement. Respondent Wesling is a legal custodian of Petitioner and has authority to release her.

15.     Respondent Michael Krol is sued in his official capacity as the HSI New England Special Agent in Charge. In this capacity, Respondent Krol is a legal custodian of Petitioner and has the authority to release her.

16.     Respondent Kristi Noem is sued in her official capacity as Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Noem is a legal custodian of Petitioner.

17.     Respondent Pamela Bondi is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA.  Respondent Bondi is a legal custodian of Petitioner.

18.    Respondent Donald J. Trump is named in his official capacity as the President of the United States. In this capacity, he is responsible for the policies and actions of the executive branch, including the Department of State and Department of Homeland Security.

## STATEMENT OF FACTS

19.    Petitioner is a 22-year-old citizen of Cape Verde. Petitioner has resided in the United States for approximately 11 years with her mother. She is currently pregnant.

20.    In 2015, Petitioner entered the United States as a beneficiary of her mother's lawful permanent resident status.

21.    Upon information and belief, DHS denied Petitioner's last application for removal of her conditions on her permanent resident status.  Her case is pending de novo review before the Executive Office of Immigration Review.

22.    No final order terminating her lawful permanent resident status or order of removal has been issued by an immigration judge.

23.    On or about February 11, 2026, Ms. Semedo appeared in Massachusetts state court to resolve an outstanding warrant and/or pending charge arising from a past domestic dispute. The state court released her on her own personal recognizance. Immediately after she resolved the matter and attempted to leave the courthouse, ICE arrested and detained her. ICE has continued to detain Ms. Semedo without probable cause—or any individualized showing—that she presents a current danger to the community or a risk of flight, and without meaningfully considering less restrictive alternatives to detention.

24.    This detention is unlawful and punitive in light of ICE's own Directive providing that, as a general rule, ICE "should not detain, arrest, or take into custody" individuals known to be pregnant, postpartum, or nursing unless release is prohibited by law or "exceptional

circumstances" exist. ICE Directive 11032.4 (effective July 1, 2021). On information and belief Ms. Semedo is not lawfully subject to mandatory detention, and no exceptional circumstances exist.

25.   Upon information and belief, ICE does not have the proper medical infrastructure to house pregnant women in detention.

26.   At some point since her detention, her medical condition deteriorated to the point that she required hospitalization.

27.   While Ms. Semedo is hospitalized, ICE has imposed extreme restrictions that prevent her from seeing anyone in person, including her family and designated medical proxy, and has interfered with communications between Ms. Semedo, her treating physicians, and her family. These conditions are unconscionable for a civil detainee and violate the Fifth Amendment's Due Process Clause, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA").

28.   In at least one instance, a treating physician contacted Ms. Semedo's family for urgent medical discussion, but an ICE officer intervened and prevented the conversation by taking the phone away. This interference undermines informed consent and medical decision making, exacerbates Ms. Semedo's medical vulnerability, and risks harm to Ms. Semedo and her unborn child.

29.   Ms. Semedo has also been threatened with transfer away from Massachusetts and away from her medical providers. Any such transfer would sever her from family support and counsel, disrupt urgent prenatal and medical care, and further endanger her health.

30.   Ms. Semedo therefore petitions this Court for a writ of habeas corpus and requests immediate release from immigration detention. In the alternative, and at minimum, Ms. Semedo

seeks immediate injunctive relief requiring meaningful access to her family and medical proxy while she remains hospitalized (including the ability to communicate freely and privately with her medical proxy and counsel), and an order preventing any transfer out of Massachusetts or away from necessary medical care pending further order of this Court.

## <u>CLAIMS FOR RELIEF</u>.

### COUNT TWO
### Violation of Fifth Amendment Right to Due Process

31.    The allegations in the above paragraphs are realleged and incorporated herein.

32.    The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

23. The Eighth Amendment requires that "inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).  Accordingly, "[i]t would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Id.*  The Supreme Court has explicitly recognized that the risk of contracting a communicable disease may constitute such an "unsafe, life-threatening condition" that threatens "reasonable safety."  *Id.* at 38. Immigration detainees, even those with prior criminal convictions, are civil detainees held pursuant to civil immigration laws.  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

24. For pretrial and civil detainees, due process "provides at least as much protection . . . as the Eighth Amendment provides for convicted inmates."  *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 155 (1st Cir. 2007) (emphasis added); accord *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208

(1st Cir. 1990).   Indeed, civil detainees, like Petitioner here, are entitled to conditions of confinement that are superior to those of convicted prisoners.  See *Alves v. Murphy*, 530 F. Supp. 2d 380, 387 (D. Mass. 2008); see also *King v. Cty. of Los Angeles*, 885 F.3d 548, 557 (9th Cir. 2018); *Jones v. Blanas*, 393 F.3d 918, 933-34 (9th Cir. 2004). Here, the Due Process Clause provides Petitioner with the same base level protections as the Eighth Amendment would to a person in criminal detention.

25. To show a violation of the Eighth Amendment, it is sufficient for a detained person to show a wanton disregard sufficiently evidenced "by denial, delay, or interference with prescribed health care." *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991). Mr. Filho requires specific treatment for leukemia Respondents cannot and will not provide him while they hold him in detention. Her continued incarceration, therefore, is a denial of and interference with her prescribed health care. Because this denial violates the Eighth Amendment, and because the Due Process clause incorporates Eighth Amendment protections for noncitizens in immigration detention, Respondents violate Petitioner's right to due process.

26. Consequently, under the Due Process Clause, pretrial and civil detainees, like petitioners, may not be subject to conditions that amount to punishment, including conditions that fail to "reasonably relate[] to a legitimate governmental objective." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979); accord Lyons v. Powell, 838 F.2d 28, 29 (1st Cir. 1988).  Accordingly, the First Circuit has found that, at a minimum, detention conditions are unconstitutional where they: (1) objectively deny a minimal measure of necessities required for civilized living; and (2) are imposed with deliberate indifference to inmate health or safety. *Surprenant v. Rivas*, 424 F.3d 5, 18-19 (1st Cir. 2005); *Reaves v. Dep't of Corr.*, 333 F. Supp. 3d 18, 26 (D. Mass. 2018); *Couchon v. Cousins*, No. 17-10965, 2018 WL 4189694, at *6 (D. Mass. Aug. 31, 2018).

27. Additionally, the Due Process Clause protects detainees, like petitioners, not only from conduct amounting to deliberate indifference, but also from objectively unreasonable conduct that creates a risk to their safety. See *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-73 (2015); Miranda v. Cty. of Lake, 900 F.3d 335, 352 (7th Cir. 2018); *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1120, 1122-25 (9th Cir. 2018). The language of Kingsley is broad—applying not only to use of excessive force by the government, but to government action generally, including actions involving medical treatment. See *Gordon*, 888 F.3d at 1124; see also *Couchon*, 2018 WL 4189694, at *6 (noting that there is "much to be said" for the reasoning that extends Kingsley to conditions of confinement cases).

28. Regardless, under either the objective unreasonableness or deliberate indifference standard, Petitioner should succeed on the merits of her claim. If she does not receive proper access to care, he will face very dire consequences.

29. Further, to the extent relevant, it also clear that there are substitute measures that can achieve community safety and petitioners' future appearance, absent continued detention. The Court can order release subject to home confinement, regular check-ins, GPS monitoring, and other conditions that the Court deems appropriate. Given that her Immigration Court hearing is less than a few weeks away, this Court could order her release until that time arrives.

30. But in all events, because the government has actual knowledge of the impending, preventable, and extreme risks that lack of medical care poses to Petitioner (including death), her release is required under due process principles.

## COUNT TWO
### Release on Bail Pending Adjudication

33. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

9

34. Federal courts sitting in habeas possess the "inherent power to release the petitioner pending determination of the merits." *Savino v. Souza*, 453 F. Supp. 3d 441, 454 (D. Mass. 2020) (quoting *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam)); see also *Da Graca v. Souza*, 991 F.3d 60 (1st Cir. 2021). Federal courts "have the same inherent authority to admit habeas petitioners to bail in the immigration context as they do in the criminal habeas case." *Id*. (quoting *Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001)). "A court considering bail for a habeas petitioner must inquire into whether the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Id*. (quoting Mapp, 241 F.3d at 230) (cleaned up).

35. This petition raises constitutional and statutory claims challenging the Petitioner's detention. Upon reason and belief, the Petitioner fears her transfer to a detention facility outside of Massachusetts, where her remote location would prevent her from adequately litigating her removal and bond proceeding by limiting her access to counsel and evidence located within the District of Massachusetts.

**COUNT THREE**
**Violation of the Administrative Procedure Act**

36. The allegations in the above paragraphs are realleged and incorporated herein.

37. The Administrative Procedure Act (APA) provides that a court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When the government has promulgated "[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes, such that the agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi Shaugnessy*, 347 U.S. 260, 266, 268 (1954). The Accardi doctrine also obligates agencies to comply with procedures it outlines in its internal

10

manuals. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (finding that an agency is obligated to comply with procedural rules outlined in its internal manual).

38.     A court reviewing agency action "must assess … whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment; it must "examine[e] the reasons for agency decisions- or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

39.     Ms. Semedo is known to be pregnant. No exceptional circumstances exist, and release is not prohibited by law. Respondents have nonetheless detained Ms. Semedo without demonstrating that the Directive's requirements were satisfied or that a proper Field Responsible Official approved detention.

40.     Respondents' failure to follow their own policy and to consider less restrictive alternatives to detention—such as bond, conditional parole, electronic monitoring, reporting requirements, or third-party custodianship—renders the detention arbitrary, capricious, and contrary to law, in violation of 5 U.S.C. § 706(2) and the Due Process Clause.

41.     ICE Policy 11022.1 reflects that transfers should be minimized and that, absent necessity, ICE will not transfer a detainee when there is documentation of immediate family, an attorney of record, pending removal proceedings, or a scheduled bond hearing in the Area of Responsibility. ICE Policy 11022.1 § 5.2(1).

42.     Any transfer of Ms. Semedo under these circumstances—particularly while she is hospitalized and pregnant—would irreparably impair access to counsel and family support, disrupt critical medical care, and would be arbitrary and punitive in violation of due process. Ms. Semedo therefore seeks an order enjoining any transfer pending resolution of this petition.

43.     The APA authorizes courts to "set aside" agency action that is "in excess of

11

statutory jurisdiction, authority, limitations, or statutory right" or otherwise "not in accordance with law." 5 U.S.C. § 706(2)(A), (C). It directs courts to "decide all relevant questions of law" and to "interpret constitutional and statutory provisions." *Id* at § 706. Courts perform this review *de novo* and therefore afford agency interpretation of the statute no deference when determining its meaning. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

In detaining a pregnant woman in violation of the incorporated protections against cruel and unusual punishment, Respondents acted in excess of statutory authority, limitations, and statutory right. Petitioner's detention is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, and contrary to law. 5 U.S.C. § 706 (2)(A), (B), (C).

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1)    Assume jurisdiction over this matter;

(2)    Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days.

(3)    Declare that Petitioner's detention and arrest violates the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act;

(4)    Issue a Temporary Restraining Order forthwith immediately providing for Petitioner's release from ICE custody.

(5)    Alternately enter a Temporary Restraining Order Immediately ordering to Respondents to provide full access to family, medical proxy and counsel.

(6)    Issue a Writ of Habeas Corpus ordering Respondents to immediately release petitioner, and, in the interim preventing her transfer outside of the District.

(7)    Award Petitioner attorney's fees and costs under the Equal Access to Justice Act, and on

any other basis justified under law; and

(8)    Grant any further relief this Court deems just and proper.

Respectfully submitted,
Dennifer Benvinda Semedo
By and through her counsel,

Dated: Febuary 14, 2026

 /s/ Carl Hurvich
Carl Hurvich
Brooks Law Firm
10 High Street, Ste 3.
Medford, MA 02155
(617) 245 8090
carl@Brookslawfirm.com


/s/Todd C. Pomerleau
Todd C. Pomerleau
Rubin Pomerleau, P.C.
Two Center Plaza, Suite 520
Boston, Massachusetts 02108
Tel.: (617) 367-0077
Fax: (617) 367-0071
rubinpom@rubinpom.com
MA BBO#664974

## <u>VERIFICATION PURSUANT TO 28 U.S.C. § 2242</u>

I represent Petitioner, Jennifer Benvinda Semedo, and submit this verification on her behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 14TH day of February 2026.

/s/<em>Carl Hurvich</em>
Carl Hurvich

14