**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DJENIFFER BENVINDA SEMEDO | ) | |
| | ) | Case No. 26-10873 |
| Petitioner, | ) | |
| | | **FIRST AMENDED PETITION** |
| | | **FOR WRIT OF** |
| v. | ) | **HABEAS CORPUS** |
| | ) | |
| TODD M. LYONS, Acting Director Immigration and | ) | |
| Customs Enforcement, Boston Field Office | ) | |
| DAVID WESLING, Acting Field Office Director, | ) | |
| MICHAEL KROL, HSI New England Special | ) | |
| Agent in Charge | ) | |
| KRISTI NOEM, U.S. Secretary | ) | |
| of Homeland Security, PAMELA BONDI, | ) | |
| U.S. Attorney General, DONALD TRUMP, President | ) | |
| of the US | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241[1]

---

[1] Due to an issue with the PACER payment system, the Petition was originally filed as an amended complaint, the identical documents were then submitted with the filing fee when the system was again functional. Petitioner respectfully requests that this filing be considered the first amended pleading as of right and considered the operative petition from the date of filing.

## INTRODUCTION

1.      Petitioner Djeniffer Benvinda Semedo ("Petitioner") is a Cape Verde national who has lived in Massachusetts for approximately eleven years as a child beneficiary of her mother's lawful permanent resident status. On February 11, 2026—immediately after appearing in Brockton District Court and being released on personal recognizance—federal immigration agents arrested Ms. Semedo and transported her, while approximately 24 weeks pregnant, to the Burlington ICE Field Office. ICE confined her in an office "hold room" for roughly three days without adequate nutrition or timely medical evaluation, until she became acutely ill and required emergency hospitalization. (See Declaration of Blair Johnson Wylie, M.D. MPH ("Wylie Decl."), Ex. 1.)[2]

2.      After Ms. Semedo was taken to the hospital, ICE initially prevented her from communicating with counsel and her family, including her designated medical proxy. On February 14, 2026, Judge Kobick, sitting as the emergency duty judge, entered an emergency order directing Respondents not to remove Ms. Semedo from the District of Massachusetts for at least 72 hours and ordering ICE to ensure that Ms. Semedo may communicate freely with her medical proxy and counsel while hospitalized. (Emergency Order, ECF No. 2 (Feb. 14, 2026).) Despite that order, ICE has delayed compliance and continues to insist that it must approve each in-person visit— including visits from counsel—and continues to severely restrict Ms. Semedo's access to family and social support while she remains under guard in the hospital.

3.      Accordingly, to vindicate Petitioner's statutory, constitutional, and regulatory rights, this Court should grant the instant petition for a writ of habeas corpus.

---

[2] The declaration attached as Exhibit 1 contains personal medical information, Ms. Semedo was advised of her right to seek submission of the exhibit under seal, however she has chosen to allow it to be filed with the normal restrictions on PACER/ ECF for immigration related cases regarding access for non-parties, understanding it is still a public record as filed.

4.      Petitioner alleges violations of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act.

5.      Petitioner urges this Court to find that her arrest and detention are illegal and order her immediate release. In the alternate and at minimum, Petitioner seeks injunctive relief requiring Respondents to comply with this Court's emergency order, to permit free communication and in-person access by counsel and her medical proxy, to permit meaningful family support while she remains hospitalized, to enjoin any transfer outside the District of Massachusetts or away from necessary medical care, to order that alterative detention such as home confinement are employed when she is released from the hospital; and to award reasonable attorney's fees.

## JURISDICTION

6.      This action arises under the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

8.      This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

9.      Venue is proper because Petitioner is detained within this District, including at the Burlington ICE Field Office in Burlington, Massachusetts. After her detention at Burlington, ICE transported Petitioner for emergency care at Lahey Medical Center and then transferred her to Beth

Israel Deaconess Medical Center due to a medical emergency. She remains under detention at the hospital with ICE officers or their contractors stationed outside her room 24 hours a day, she is prohibited speaking with or seeing anyone aside from her care team, her medical proxy or counsel of record and even these visits must still be pre-approved by ICE.

10.     Venue is proper in this District because Respondents are officers, employees, or agencies of the United States, a substantial part of the events or omissions giving rise to her claims occurred in this District, and Petitioner resides in this District. There is no real property involved in this action.  28 U.S.C. § 1391(e).

**REQUIREMENTS OF 28 U.S.C. § 2243**

11.     The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

12.     Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

**PARTIES**

13.     Petitioner DJENIFFER BENVINDA SEMEDO entered the United States as a child beneficiary of her mother's lawful permanent resident status. She has been living in the United

4

States for about 11 years. Petitioner is a resident of Massachusetts. She is in the custody, and under the direct control, of Respondents and their agents.

14.     Respondent TODD LYONS is named in his official capacity as the Acting Director for U.S. Immigration and Customs Enforcement. As the Senior Official Performing the Duties of the Director of ICE, he is responsible for the administration and enforcement of the immigration laws of the United States and is legally responsible for pursuing any effort to remove the Petitioner; and therefore, is a custodian of the Petitioner.

15.     Respondent DAVID WESLING is sued in his official capacity as the Director of the Boston Field Office of U.S. Immigration and Customs Enforcement. Respondent Wesling is a legal custodian of Petitioner and has authority to release her.

16.     Respondent MICHAEL KROL is sued in his official capacity as the HSI New England Special Agent in Charge. In this capacity, Respondent Krol is a legal custodian of Petitioner and has the authority to release her.

17.     Respondent KRISTI NOEM is sued in her official capacity as Secretary of the U.S. Department of Homeland Security (DHS). In this capacity, Respondent Noem is responsible for the implementation and enforcement of the Immigration and Nationality Act, and oversees ICE, the component agency responsible for Petitioner's detention and custody. Respondent Noem is a legal custodian of Petitioner.

18.     Respondent PAMELA BONDI is sued in her official capacity as the Attorney General of the United States and the senior official of the U.S. Department of Justice (DOJ). In that capacity, she has the authority to adjudicate removal cases and to oversee the Executive Office for Immigration Review (EOIR), which administers the immigration courts and the BIA. Respondent Bondi is a legal custodian of Petitioner.

19.    Respondent DONALD J. TRUMP is named in his official capacity as the President of the United States. In this capacity, he is responsible for the policies and actions of the executive branch, including the Department of State and Department of Homeland Security.

**STATEMENT OF FACTS**

20.    Petitioner is a 22-year-old citizen of Cape Verde. Petitioner has resided in the United States for approximately 11 years with her mother. She is currently pregnant.

21.    In 2015, Petitioner entered the United States as a beneficiary of her mother's lawful permanent resident status.

22.    Upon information and belief, DHS denied Petitioner's last application for removal of her conditions on her permanent resident status.  Her case is pending de novo review before the Executive Office of Immigration Review.

23.    No final order terminating her lawful permanent resident status or order of removal has been issued by an immigration judge.

24.    Ms. Semedo has no criminal convictions. In September 2022, a Brockton District Court complaint charging larceny by check under $1,200—arising from a $250 check-scam in which Ms. Semedo was the victim—was dismissed, and the case was closed. The docket reflects that the case was dismissed at arraignment because the complaint was not signed and Ms. Semedo was discharged. (See Brockton Dist. Ct. Docket No. 2215CR003313, Ex. 3.)

25.    On February 11, 2026, Ms. Semedo voluntarily appeared in Brockton District Court to address an outstanding default warrant in a pending case arising from a prior domestic dispute with a former partner. See Brockton Dist. Ct. Docket No. 2415CR001625 (Ex. 4). Ms. Semedo was arraigned on April 29, 2024 and released on personal recognizance with pretrial conditions. After she failed to appear at a June 17, 2024 pretrial hearing, the Court issued a default warrant.

Ms. Semedo is now actively defending the matter and appeared to resolve the warrant. On February 11, 2026, the Brockton District Court recalled the warrant and removed the default, leaving conditions of release in place; a further pretrial hearing is scheduled for March 9, 2026. The Commonwealth did not seek cash bail, and the Court imposed none, expressing no concern that Ms. Semedo posed a flight risk. (See Declaration of Caleb B. Weiner, Esq. ("Weiner Decl."), Ex. 2.) Immediately after she resolved the matter and attempted to leave the courthouse, ICE arrested and detained her. Ms. Semedo reports that ICE agents placed her in handcuffs and ankle shackles despite her pregnancy and transported her to the Burlington ICE Field Office. There, she was held in a holding cell for approximately three days with little to no information about the basis for her detention or how long she would be held, and without meaningful access to counsel or family. ICE has continued to detain Ms. Semedo without probable cause—or any individualized showing— that she presents a current danger to the community or a risk of flight, and without meaningfully considering less restrictive alternatives to detention.

26.    According to a Brockton Police Department report concerning the April 28, 2024 incident underlying this pending case, officers responded to a 911 hang-up call and observed signs of an altercation on the porch of 48 Glen Ave, including spilled donuts, broken glass, and Petitioner missing a shoe; Petitioner had a bleeding laceration on her right elbow. Petitioner reported that, after leaving work at Honey Dew Donuts, she went by Uber to retrieve her belongings from the residence where she had been sleeping in the basement with her then-partner, Daniel Fernandes Canuto, but that she was denied entry and was cut when she fell near a table with glass decorations. Daniel, his mother (Maria Fernandes), and his brother (Christian Depina) provided a different account, including an allegation that Petitioner used a broken glass decoration to strike Daniel. Daniel denied injury; Christian had a small scratch; all parties declined medical

7

attention and no 209A order was sought. Officers arrested Petitioner for domestic-violence assault and battery and two counts of simple assault and battery. (Brockton Police Department Report, Ref. 24-912-AR (Apr. 28, 2024) (Ex. 5).) At some point it appears she was also charged with assault and battery with a dangerous weapon. (Ex. 4). She contests these allegations and is defending herself in Massachusetts District Court.

27.     This detention is unlawful and punitive in light of ICE's own Directive providing that, as a general rule, ICE "should not detain, arrest, or take into custody" individuals known to be pregnant, postpartum, or nursing unless release is prohibited by law or "exceptional circumstances" exist. ICE Directive 11032.4 (effective July 1, 2021). On information and belief, Ms. Semedo is not lawfully subject to mandatory detention—including under the Laken Riley Act—and no exceptional circumstances exist. The state-court matters Respondents might cite predate the Laken Riley Act's 2025 enactment, and absent a clear statement of retroactive application, the Act cannot lawfully be invoked to mandate detention here. To the extent Respondents assert mandatory detention based on dismissed allegations or unproven, non-final charges, that position itself raises serious due process concerns and cannot justify continued detention of a medically fragile, six-month-pregnant civil detainee.

28.     Upon information and belief, ICE does not have the proper medical infrastructure to house pregnant women in detention.

29.     During Ms. Semedo's first days in ICE custody at the Burlington Field Office, her physical condition deteriorated rapidly. Ms. Semedo is approximately six months pregnant (24 3/7 weeks' gestation). She developed worsening abdominal pain, nausea, vomiting, and decreased fetal movement. Ms. Semedo reports that, while held in the Burlington hold room, she had limited food intake because the available options were minimal and not nutritious (e.g., macaroni and

8

cheese and muffins, with no fruits or vegetables), and that this diet worsened her abdominal pain. (Wylie Decl., Ex. 1.) Despite her repeated requests for medical attention, Respondents delayed hospital transfer until her condition worsened; she was transported first to Lahey Medical Center and then transferred on February 13, 2026 to Beth Israel Deaconess Medical Center ("BIDMC") for emergency care.

30.    At BIDMC, Ms. Semedo was found to have gallstones (cholelithiasis) with concern for common bile duct obstruction, and she received antibiotics and further imaging (MRCP). On admission, she had significant electrolyte abnormalities (including hypokalemia and hypomagnesemia), which her treating team understood could have resulted from limited oral intake and vomiting during detention. Her electrolytes required replacement and she has required IV hydration. Efforts to resume oral intake have been limited by recurrent abdominal pain and nausea, and her care team continues to monitor whether surgery (cholecystectomy) is necessary— a procedure that, at this gestational age, carries risk of triggering preterm labor. (Wylie Decl., Ex. 1.)

31.    Ms. Semedo also has a slightly dilated and soft cervix unusual at this gestational age in a first pregnancy, placing her at risk of preterm labor, and she is receiving treatment for anemia. (Wylie Decl., Ex. 1.) Dr. Wylie explains that Ms. Semedo needs a specific, monitored, non-fatty and nutritious diet, continued prenatal and specialist monitoring, and social support to mitigate the well-documented risks that prenatal stress and incarceration pose to pregnancy outcomes. Dr. Wylie has observed Ms. Semedo crying and upset in the hospital and reports that Ms. Semedo feels stressed, isolated from family, uncertain, and depressed. Dr. Wylie concludes that further ICE detention would place Ms. Semedo at risk of unnecessary pregnancy

complications, including preterm labor and delivery at a gestational age that carries serious risks for the infant. (Id.)

32.     Ms. Semedo remains under ICE guard while hospitalized and lives under the ongoing fear that she will be returned to detention upon discharge. That continuing fear and stress are negatively affecting her medical condition and recovery, and place both Ms. Semedo and her unborn child at risk. (Wylie Decl., Ex. 1.)

33.     After Ms. Semedo was transported to the hospital, ICE continued to treat her as a detainee with even less rights to communicate and for visitation than those it houses at correctional facilities. For a period of time, she was unable to speak with counsel or her family, including her designated medical proxy, despite her medical vulnerability. On February 14, 2026—after counsel filed an emergency petition in this Court—Judge Kobick, sitting as the emergency duty judge, entered an emergency order directing ICE to (i) refrain from removing Ms. Semedo from the District of Massachusetts for at least 72 hours and (ii) ensure that Ms. Semedo may communicate freely with her medical proxy and counsel while hospitalized. (Emergency Order, ECF No. 2 (Feb. 14, 2026).) ICE nonetheless has taken the position that it must approve each in-person visit, including visits from counsel. When counsel went to visit Ms. Semedo on Sunday, February 15, 2026, the officers or contract guards stationed outside her room were unaware of the Court's order. Counsel was forced to contact the Civil Chief of the U.S. Attorney's Office on a Sunday to inquire how ICE intended to comply with the Court's order. Ms. Semedo's medical proxy was still denied access until Monday morning, when a phone was finally placed in her room.

34.     Even after the placement of a phone, ICE has imposed extreme restrictions that have prevented Ms. Semedo from seeing anyone in person, including close family members, and has interfered with communications between Ms. Semedo, her treating physicians, and her family.

ICE continues to bar meaningful in-person access to Ms. Semedo's family while she remains hospitalized and continues to interfere with physician–family communications. These conditions are unconscionable for a civil detainee and violate the Fifth Amendment's Due Process Clause, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA").

35.     In at least one instance, a treating physician contacted Ms. Semedo's family for urgent medical discussion, but an ICE officer intervened and prevented the conversation by taking the phone away. This interference undermines informed consent and medical decision making, exacerbates Ms. Semedo's medical vulnerability, and risks harm to Ms. Semedo and her unborn child.

36.     Ms. Semedo has also been threatened with transfer away from Massachusetts and away from her medical providers. Any such transfer would sever her from family support and counsel, disrupt urgent prenatal and medical care, and further endanger her health.

37.     Ms. Semedo therefore petitions this Court for a writ of habeas corpus and requests immediate release from immigration detention. In the alternative, and at minimum, Ms. Semedo seeks immediate injunctive relief requiring meaningful access to her family while she remains hospitalized (including the ability for her treating physicians to communicate with her family without ICE interference), and an order preventing any transfer out of Massachusetts or away from necessary medical care pending further order of this Court.

## **CLAIMS FOR RELIEF**.

### COUNT ONE
### **Violation of Fifth Amendment Right to Due Process**

38.     The allegations in the above paragraphs are realleged and incorporated herein.

39.    The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

40.    Substantive due process also protects civil detainees from executive action that is "arbitrary in the constitutional sense" and that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998). When the government takes a person into custody and thereby renders her unable to care for herself, the Constitution imposes a corresponding duty to provide for basic human needs—including food, water, and medical care—and deliberate indifference to those needs may satisfy the conscience-shocking standard, particularly where officials have time to make reasoned decisions. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989); *Lewis*, 523 U.S. at 851–53; *Rivera v. Rhode Island*, 402 F.3d 27, 36 (1st Cir. 2005).

41. The Eighth Amendment requires that "inmates be furnished with the basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).  Accordingly, "[i]t would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them." *Id.*  The Supreme Court has explicitly recognized that the risk of contracting a communicable disease may constitute such an "unsafe, life-threatening condition" that threatens "reasonable safety."  *Id.* at 38. Immigration detainees, even those with prior criminal convictions, are civil detainees held pursuant to civil immigration laws.  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

42. For pretrial and civil detainees, due process "provides at least as much protection . . . as the Eighth Amendment provides for convicted inmates."  *Ruiz-Rosa v. Rullan*, 485 F.3d 150, 155 (1st Cir. 2007) (emphasis added); accord *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208

(1st Cir. 1990). Indeed, civil detainees, like Petitioner here, are entitled to conditions of confinement that are superior to those of convicted prisoners. See *Alves v. Murphy*, 530 F. Supp. 2d 380, 387 (D. Mass. 2008); see also *King v. Cty. of Los Angeles*, 885 F.3d 548, 557 (9th Cir. 2018); *Jones v. Blanas*, 393 F.3d 918, 933-34 (9th Cir. 2004). Here, the Due Process Clause provides Petitioner with the same base level protections as the Eighth Amendment would to a person in criminal detention.

43. To show a violation of the Eighth Amendment, it is sufficient for a detained person to show a wanton disregard, as evidenced by the "denial, delay, or interference with prescribed health care." *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991).

44. Here, Respondents have denied, delayed, and interfered with Ms. Semedo's access to necessary medical care and basic human needs in a manner that is punitive, deliberately indifferent, and conscience-shocking. Ms. Semedo is approximately six months pregnant (24 3/7 weeks' gestation). While held in ICE custody at the Burlington ICE Field Office hold room for roughly three days, Respondents failed to provide adequate nutrition and hydration appropriate for pregnancy—providing only minimal, non-nutritious options that Ms. Semedo could not tolerate—and delayed medical evaluation despite repeated reports of vomiting, escalating abdominal pain, and decreased fetal movement. Ms. Semedo was ultimately transported to the hospital with gallbladder pathology and significant electrolyte abnormalities, requiring IV fluids and electrolyte replacement and ongoing maternal-fetal medicine and surgical monitoring; she must follow a monitored non-fatty and nutritious diet to avoid recurrence of symptoms, and her pregnancy is no longer routine. (Wylie Decl., Ex. 1.)

45. Even while hospitalized, ICE has imposed conditions that isolate Ms. Semedo from family and social support and interfere with her ability to communicate with counsel and her

designated medical proxy. ICE initially prevented Ms. Semedo from speaking with counsel or her medical proxy. After the filing of an emergency petition, the Court entered an order directing ICE to ensure free communication with counsel and Ms. Semedo's medical proxy. (Emergency Order, ECF No. 2 (Feb. 14, 2026).) Yet ICE has continued to insist that it must approve each in-person visit—including from counsel—guards stationed outside Ms. Semedo's room were unaware of the Court's order when counsel attempted to visit on Sunday February 15, and ICE has continued to interfere with physician–family communications. This isolation and interference in medical decision-making compounds Ms. Semedo's medical vulnerability and worsens the stress that her treating physician identifies as a material risk factor for preterm birth and other serious pregnancy complications. (Wylie Decl., Ex. 1.)

46.     Courts have found that similarly harsh conditions in ICE field-office holding rooms likely violate the Fifth Amendment. In *Mercado v. Noem*, 800 F. Supp. 3d 526 (S.D.N.Y. 2025), Judge Kaplan granted preliminary injunctive relief concerning the ICE "hold rooms" at 26 Federal Plaza, finding a strong likelihood of success on due process claims where detainees were held for multiple days with inadequate food and water, denied basic hygiene, and had severely restricted access to counsel. The Burlington ICE Field Office functions as the same type of office-based holding facility; holding a six-month-pregnant civil detainee there for approximately three days, without adequate food, hydration, or timely medical evaluation, is punitive and unconstitutional.

47.     As Judge Kaplan further explained, ICE's own holding-facility policy provides that, absent exceptional circumstances, no detainee should be housed in a holding facility longer than 12 hours and detainees should receive meals at least every six hours. Respondents' multi-day hold-room detention of Ms. Semedo—combined with the failure to provide appropriate nutrition

for pregnancy and biliary disease—cannot be squared with those standards or any legitimate governmental objective.

48.    To the extent Respondents contend that Ms. Semedo is subject to mandatory detention under the Laken Riley Act based on dismissed allegations or pending, unproven charges, that application of mandatory detention violates due process. Ms. Semedo's only identified criminal matters are a dismissed 2022 check-related complaint (Ex. 3)—arising from a $250 check-scam in which Ms. Semedo was the victim—and a pending domestic-dispute case in which she was released on personal recognizance and is not viewed by the state court as a flight risk (Ex. 4; Weiner Decl., Ex. 2). Detaining a pregnant civil detainee without any individualized determination of danger or flight risk—based on dismissed or unadjudicated allegations—offends due process. Moreover, the Laken Riley Act was enacted in 2025, after both the 2022 dismissed complaint and the April 2024 incident in the pending state case; absent a clear statement of retroactive application, Respondents' attempt to apply it to pre-enactment conduct to impose mandatory detention is impermissibly retroactive and violates due process. See *Doe v. Moniz*, 800 F. Supp. 3d 203 (D. Mass. 2025) (ordering bond hearing where government relied on Laken Riley Act mandatory detention based on arrest without criminal charges); *S.E. v. Noem*, 2026 WL 206085 (E.D. Cal. Jan. 27, 2026) (similar, ordering bond hearing with government burden). See also *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *Vartelas v. Holder*, 566 U.S. 257, 266 (2012).

49.    Finally, Respondents' ongoing isolation of Ms. Semedo from family and social support in the hospital—together with the continuing threat of returning her to detention despite her medically fragile, high-risk pregnancy—constitutes unconscionable government conduct that shocks the conscience. At a minimum, any further detention must provide adequate nutrition,

medical accommodations, prenatal care, and meaningful access to family support and medical decision-making. ICE cannot provide that level of care and support in an office hold room or detention setting.

50.    Consequently, under the Due Process Clause, pretrial and civil detainees, like petitioners, may not be subject to conditions that amount to punishment, including conditions that fail to "reasonably relate[] to a legitimate governmental objective." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979); accord *Lyons v. Powell*, 838 F.2d 28, 29 (1st Cir. 1988).  Accordingly, the First Circuit has found that, at a minimum, detention conditions are unconstitutional where they: (1) objectively deny a minimal measure of necessities required for civilized living; and (2) are imposed with deliberate indifference to inmate health or safety.  *Surprenant v. Rivas*, 424 F.3d 5, 18-19 (1st Cir. 2005); *Reaves v. Dep't of Corr.*, 333 F. Supp. 3d 18, 26 (D. Mass. 2018); *Couchon v. Cousins*, No. 17-10965, 2018 WL 4189694, at *6 (D. Mass. Aug. 31, 2018).

51.    Additionally, the Due Process Clause protects detainees, like Petitioner, not only from conduct amounting to deliberate indifference, but also from objectively unreasonable conduct that creates a risk to their safety.  See *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-73 (2015); *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1120, 1122-25 (9th Cir. 2018).  The language of *Kingsley* is broad—applying not only to use of excessive force by the government, but to government action generally, including actions involving medical treatment.   See *Gordon*, 888 F.3d at 1124; see also *Couchon*, 2018 WL 4189694, at *6 (noting that there is "much to be said" for the reasoning that extends *Kingsley* to conditions of confinement cases).

52.    Regardless, under either the objective unreasonableness or deliberate indifference standard, Petitioner should succeed on the merits of her claim. If she does not receive proper access

to care, she will face very dire consequences.

53.     Further, to the extent relevant, it is also clear that there are substitute measures that can achieve community safety and Petitioner's future appearance, absent continued detention. The Court can order release subject to home confinement, regular check-ins, GPS monitoring, and other conditions that the Court deems appropriate. Given that her Immigration Court hearing is scheduled for July 30, 2026, this Court could order her release pending that hearing.

54.     But in all events, because the government has actual knowledge of the impending, preventable, and extreme risks that lack of medical care poses to Petitioner (including death), her release is required under due process principles.

## COUNT TWO
### Release on Bail Pending Adjudication

55.     Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

56.     Federal courts sitting in habeas possess the "inherent power to release the petitioner pending determination of the merits." *Savino v. Souza*, 453 F. Supp. 3d 441, 454 (D. Mass. 2020) (quoting *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam)); see also *Da Graca v. Souza*, 991 F.3d 60 (1st Cir. 2021). Federal courts "have the same inherent authority to admit habeas petitioners to bail in the immigration context as they do in the criminal habeas case." *Id*. (quoting *Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001)). "A court considering bail for a habeas petitioner must inquire into whether the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Id*. (quoting Mapp, 241 F.3d at 230) (cleaned up).

57.     This petition raises constitutional and statutory claims challenging Petitioner's arrest and detention. Upon information and belief, Petitioner faces a substantial risk of transfer to

a detention facility outside Massachusetts. Such a transfer would materially impair her ability to litigate this petition and her pending immigration proceedings and would disrupt urgent prenatal and other medical care.

58.     Extraordinary circumstances warrant release on bail pending adjudication. Ms. Semedo is approximately 24 weeks pregnant and has been hospitalized with gallbladder disease and significant electrolyte abnormalities after being held for days in an ICE field-office hold room without adequate nutrition. Her treating physician concludes that continued ICE detention places Ms. Semedo at heightened risk of unnecessary pregnancy complications, including preterm labor and delivery at a gestational age that carries serious risks for the infant, and that she requires a monitored diet, hydration, prenatal care, and social support that ICE cannot provide in detention. (Wylie Decl., Ex. 1.) In addition, Respondents have interfered with communication with counsel and her medical proxy while hospitalized and have threatened transfer, each of which undermines Ms. Semedo's ability to litigate this petition and obtain informed medical care. Bail is necessary to make the habeas remedy effective.

## COUNT THREE
### Violation of the Administrative Procedure Act

59.     The allegations in the above paragraphs are realleged and incorporated herein.

60.     The Administrative Procedure Act (APA) provides that a court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). When the government has promulgated "[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes, such that the agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi Shaugnessy*, 347 U.S. 260, 266, 268 (1954). The *Accardi* doctrine also obligates agencies to comply with procedures it outlines in its internal

18

manuals. See *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (finding that an agency is obligated to comply with procedural rules outlined in its internal manual).

61.     A court reviewing agency action "must assess … whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment; it must "examine[e] the reasons for agency decisions- or, as the case may be, the absence of such reasons." *Judulang v. Holder*, 565 U.S. 42, 53 (2011) (quotations omitted).

62.     Ms. Semedo is known to be pregnant. No exceptional circumstances exist justifying carceral detention, and release is not prohibited by law. Respondents have nonetheless detained Ms. Semedo without demonstrating that the Directive's requirements were satisfied or that a proper Field Responsible Official approved detention. To the extent Respondents contend that release is "prohibited by law" because Ms. Semedo is allegedly subject to mandatory detention (including under the Laken Riley Act), that position is based on dismissed or unproven allegations and is constitutionally suspect. In any event, Respondents have offered no reasoned explanation for departing from the Directive's presumption against detention of pregnant individuals.

63.     Respondents' failure to follow their own policy and to consider less restrictive alternatives to detention—such as bond, conditional parole, electronic monitoring, reporting requirements, or third-party custodianship—renders the detention arbitrary, capricious, and contrary to law, in violation of 5 U.S.C. § 706(2) and the Due Process Clause.

64.     Respondents' detention decision also disregarded ICE's internal standards governing field-office holding facilities. As Judge Kaplan summarized in *Mercado v. Noem*, ICE's holding-facility directive requires that detainees receive a meal at least every six hours and, absent exceptional circumstances, should not be held in a holding facility longer than 12 hours. Holding Ms. Semedo for approximately three days in the Burlington Field Office hold room—while

denying her adequate nutrition and delaying medical transfer—violates those standards and further demonstrates arbitrary and capricious agency action.

65.     ICE Policy 11022.1 reflects that transfers should be minimized and that, absent necessity, ICE will not transfer a detainee when there is documentation of immediate family, an attorney of record, pending removal proceedings, or a scheduled bond hearing in the Area of Responsibility. ICE Policy 11022.1 § 5.2(1).

66.     Any transfer of Ms. Semedo under these circumstances—particularly while she is hospitalized and pregnant—would irreparably impair access to counsel and family support, disrupt critical medical care, and would be arbitrary and punitive in violation of due process. Ms. Semedo therefore seeks an order enjoining any transfer pending resolution of this petition.

67.     The APA authorizes courts to "set aside" agency action that is "in excess of statutory jurisdiction, authority, limitations, or statutory right" or otherwise "not in accordance with law." 5 U.S.C. § 706(2)(A), (C).  It directs courts to "decide all relevant questions of law" and to "interpret constitutional and statutory provisions."  Id at § 706. Courts perform this review de novo and therefore afford agency interpretation of the statute no deference when determining its meaning. See *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).

68.     In detaining a pregnant woman in violation of the incorporated protections against cruel and unusual punishment, Respondents acted in excess of statutory authority, limitations, and statutory right. Petitioner's detention is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, and contrary to law. 5 U.S.C. § 706 (2)(A), (B), (C).

## **PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests that this Court grant the following relief:

(1)    Assume jurisdiction over this matter;

(2)    Issue an Order to Show Cause directing Respondents to show cause why this Petition should not be granted within three (3) days, as contemplated by 28 U.S.C. § 2243;

(3)    Declare that Petitioner's arrest and continued detention violate the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act;

(4)    Issue a temporary restraining order and/or preliminary injunction ordering Petitioner's immediate release from ICE custody, including release directly from Beth Israel Deaconess Medical Center upon medical clearance and without return to any ICE holding facility or detention facility;

(5)    In the alternative, pending further order of this Court, order Respondents to comply immediately and fully with this Court's emergency order by ensuring that Petitioner may communicate freely with her counsel and designated medical proxy, including by permitting in-person visits, and order Respondents to permit meaningful access by close family members for support while she is hospitalized, subject only to reasonable hospital medical protocols and safety requirements (not ICE pre-approval), and to refrain from interfering with communications between Petitioner's treating physicians and her family/medical proxy; In the further alternative, if the Court does not order immediate release, order Respondents to provide Petitioner with an immediate individualized bond hearing before an immigration judge at which the Government bears the burden to justify continued detention and to show that no less restrictive alternatives can reasonably assure appearance and community safety; At a minimum, prohibit Respondents from returning

Petitioner to the Burlington ICE Field Office hold room or any other detention setting that cannot provide medically appropriate prenatal care, hydration, and the monitored nutrition and accommodations required for a six-month-pregnant individual, and require meaningful access to family support, counsel, and her medical proxy for medical decision-making;

(6)    Enjoin Respondents from transferring Petitioner outside the District of Massachusetts or away from necessary medical care while this Petition is pending;

(7)    Issue a Writ of Habeas Corpus ordering Respondents to immediately release Petitioner from custody;

(8)    Award Petitioner attorney's fees and costs under the Equal Access to Justice Act and any other basis justified under law, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,
Djeniffer Benvinda Semedo
By and through her counsel,

Dated: February 16, 2026

/s/ Carl Hurvich
Carl Hurvich
Brooks Law Firm
10 High Street, Ste 3.
Medford, MA 02155
(617) 245 8090
carl@Brookslawfirm.com

/s/Todd C. Pomerleau
Todd C. Pomerleau
Rubin Pomerleau, P.C.
Two Center Plaza, Suite 520
Boston, Massachusetts 02108
Tel.: (617) 367-0077
Fax: (617) 367-0071
rubinpom@rubinpom.com
MA BBO#664974

22

23

## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Djeniffer Benvinda Semedo, and submit this verification on her behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 16 day of February 2026.

/s/*Carl Hurvich*
Carl Hurvich