# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

DJENNIFER BENVINDA SEMEDO )
)  Case No. 26-10873
Petitioner, )
)
)
v. )
)
TODD M. LYONS, Acting Director Immigration and )
Customs Enforcement, Boston Field Office )
DAVID WESLING,  Acting Field Office Director, )
MICHAEL KROL, HSI New England Special )
Agent in Charge )
KRISTI NOEM, U.S. Secretary )
of Homeland Security, PAMELA BONDI, )
U.S. Attorney General, DONALD TRUMP, President )
of the US )
)
Respondents. )
)

## DECLARATION OF BLAIR JOHNSON WYLIE, M.D., M.P.H.

**[IN SUPPORT OF: Motion for Release Pending Adjudication of Petition for Writ of Habeas Corpus**

I, Blair Johnson Wylie, M.D., declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.  My name is Blair Johnson Wylie, M.D. I am the Chief, Obstetrics & Gynecology at Beth Israel Deaconess Medical Center I am a physician licensed to practice medicine in Massachusetts (No. 231142) and New York (No. 232488-01).

2.  I make this declaration based upon my personal knowledge and/or my review of records maintained in the ordinary course of business. If called as a witness, I could and would testify competently and truthfully to the matters stated herein.

3.  I submit this declaration in support of Djennifer Benvinda Semedo ("Patient") to provide Professional Opinions and factual background regarding the Patient's treatment, prognosis, and recommendation for further care.

**BACKGROUND AND QUALIFICATIONS**

4.  I received my undergraduate degree from Princeton University, and graduated from Harvard Medical School.  I completed my postdoctoral training in Obstetrics and Gynecology at University of Washington Medical Center, and completed a Maternal-Fetal Medicine Fellowship at Columbia University.  I am board certified in Obstetrics & Gynecology and Maternal-Fetal Medicine.  I am the Chair of the Department of Obstetrics & Gynecology at BIDMC, and a member of the faculty at Harvard Medical School.

**MATERIALS REVIEWED**

5.  In preparing this declaration, I reviewed the following materials:

a.  The Patient's BIDMC Medical Record from the date of admission to BIDMC, February 13, 2026 to February 15, 2026, which included, but was not limited to, physician and nursing notes, imaging, lab results, social work notes, vital signs, and medication records.  In addition, consulted with treating maternal-fetal medicine attending.

b.      The Impact of Prenatal Stressful Life Events on Adverse Birth Outcomes: A Systematic Review and Meta-Analysis.  Journal of Affective Disorders. 2021. Ding X, Liang M, Wu Y, et al.

2

c.      Is the Risk of Low Birth Weight or Preterm Labor Greater When Maternal Stress Is Experienced During Pregnancy? A Systematic Review and Meta-Analysis of Cohort Studies. PloS One. 2017.

d.      Birth Outcomes of Individuals Who Have Experienced Incarceration During Pregnancy. Journal of Perinatology: Official Journal of the California Perinatal Association. 2025. Miller-Bedell ER, Sie L, Carmichael SL, et al.

e.      Infant and Maternal Outcomes for Women Who Experience Imprisonment in Ontario, Canada: A Retrospective Cohort Study.  Journal of Obstetrics and Gynaecology Canada : JOGC = Journal d'Obstetrique Et Gynecologie Du Canada : JOGC. 2020. Carter Ramirez A, Liauw J, Costescu D, et al.)

## FACTUAL BACKGROUND

6.  On Friday, February 13, 2026, the Patient was transferred from Lahey Medical Center to Beth Israel Deaconess Medical Center ("BIDMC").  The Patient is 22 years old, primigravid (first pregnancy), 24 3/7 weeks' gestation.  The Patient presented to BIDMC with nausea, vomiting, abdominal pain, and decreased fetal movement.  The patient reported that these symptoms had been ongoing for approximately three (3) days.  The Patient also reported that prior to her detention, the Patient had a normal pregnancy and received routine prenatal care at Brockton Neighborhood Health Center.

7.  The Patient reported to the clinical team that since being detained by ICE, the Patient has had limited food intake, and that the options were minimal and not nutritious, for example,

3

mac'n cheese, muffins, and no fruit or vegetables, and this diet increased the Patient's abdominal pain.

8.      Upon arrival at BIDMC, the Patient underwent ultrasound imaging of her abdomen, which was demonstrative of gallstones (cholelithiasis) with concerns for an obstructed common bile duct as evidenced by dilation on the ultrasound imaging.  Patient then received antibiotics to address a concern that the obstruction was associated with or could lead to an infection (cholecystitis).

9.      On arrival, the Patient had electrolyte abnormalities (hypokalemia, hypomagnesemia), which could have been the result of limited oral intake during the Patient's detention, and the vomiting, which may lead to dehydration and electrolyte derangement.  The Patient's electrolytes were replaced in the hospital.

10.     The surgical team was consulted, and an MRCP was ordered (MRI imaging of the gallbladder, common bile duct, and head of pancreas), and while awaiting this evaluation, the Patient's oral intake was paused secondary to the potential need for surgery. MRCP did not demonstrate active obstruction.  An attempt to refeed the Patient on February 14th and 15th had limited success and the Patient experienced a recurrence of abdominal pain and nausea.

11.     The current care plan is to continue to have both maternal-fetal medicine and surgical service continue to observe the Patient to determine if a cholecystectomy is needed.  At this stage of gestation, surgery is complicated and carries the risk of triggering preterm labor, and so unless the Patient is unable to successfully feed herself without recurrent pain and nausea, the clinical goal is to avoid surgery.  The Patient's symptoms will need to continue to be monitored, and the Patient will need hydration with intravenous fluids, and intake of a specific and monitored diet of non-fatty and nutritious foods.

12. In addition to cholelithiasis, the Patient has a second clinical concern of a slightly dilated and soft cervix, which is unusual at this gestational age in a first pregnancy, and could also put the patient at risk of a preterm labor. The plan of care is to continue observation, and if the patient exhibits other signs of preterm labor, additional treatment could include tocolytics and/or steroids.

13. The Patient is also receiving treatment for anemia which appears unrelated to wither the cholelithiasis or the dilated and soft cervix and likely represents a more chronic condition.

14. The Patient reports feeling stressed, isolated from family, uncertain and depressed, and the Patient has been observed crying and upset on multiple occasions since admission.

**MEDICAL ASSESSMENT / OPINIONS**

8. The Patient is at a particularly challenging gestational age to have preterm labor. If delivery occurs, the newborn will likely survive, but also may likely have significant handicaps from prematurity.

9. The Patient needs access to a nutritious diet, particularly nonfatty foods as fatty foods trigger worsening biliary colic. According to the Patient's report, she did not receive appropriate food during her detention at ICE, and that likely worsened her condition.

10. The Patient needs continued monitoring and observation by both maternal-fetal medicine and surgical physicians to evaluate whether she will need surgery.

11. Ongoing stress and depression increases the risk of pregnancy complications, and specifically preterm birth and impaired fetal growth. Incarcerated pregnant women experience higher incidences of complications with their pregnancies. The Patient's detention in an ICE facility away from family, friends, and with an uncertain future contributes to the Patient's feelings

of stress and depression, and places her at higher risk of preterm labor and other pregnancy complications.

12.     Prenatal care is critical throughout pregnancy, and specifically when a patient experiences complications with her pregnancy.  Continued detention will not allow the Patient to continue to receive her prenatal care, and places her at higher risk of pregnancy complications. Her pregnancy is no longer considered routine.

## CONCLUSION

11. Based upon my medical training and experience, review of the Patient's medical record, review of clinical studies and medical publications, and consultation with members of the Patient's care team, I believe that further ICE detention will place the Patient at risk of unnecessary pregnancy complications, including, but not limited to, preterm labor and delivery of an infant at a time that carries dangers for the infant.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 16, 2026 at Boston, Massachusetts.

Blair Johnson Wylie, M.D. MPH
Maternal-Fetal Medicine Subspecialist
Chair, Department of Obstetrics & Gynecology, BIDMC
Member of Faculty, Harvard Medical School